UNITED STATES DISTRICT COURT DISTRICT
OF MINNESOTA

Case No. 0:25-cv-02212-JRT-EMB

**ROBERT BROOKS HOEL**, Plaintiff,

v.

CITY OF MINNEAPOLIS; HENNEPIN COUNTY; OFFICER ADNAN DIDOVIC (#1537); OFFICER STEPHEN SPORNY (#6736); SERGEANT PHILLIP GANGNON (#2179); and JOHN DOES 1–X, Defendants.

# SECOND AMENDED COMPLAINT

(42 U.S.C. § 1983 and State Law)

## Preliminary Statement

This is a civil rights action under 42 U.S.C. § 1983. On June 5, 2024, Plaintiff was arrested without probable cause while standing on Hennepin Avenue, one of Minneapolis's busiest public streets—then torn up for reconstruction but open to pedestrians. He was cuffed, searched, and had gemstones thrown into the dirt. Officers seized his bicycle, laptop, camera, knives, and bags, most of which were destroyed within months.

At the Hennepin County Jail, deputies forced Plaintiff's hands (still cuffed behind his back) onto a fingerprint scanner, compelled him through a full-body scanner, stripped him to underwear, placed him barefoot in a freezing concrete cell, forced him to kneel with his nose to the wall surrounded by deputies wielding batons, and kept him under constant camera surveillance for three days, including while he used the toilet in the open cell. Plaintiff shivered constantly, his teeth chattering uncontrollably, and tore his only t-shirt trying to cover his knees.

Nearly a year later, after Plaintiff filed this federal action and forced the release of his withheld bicycle, prosecutors filed retaliatory narcotics charges.

## Jurisdiction and Venue

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper in the District of Minnesota under 28 U.S.C. § 1391.

## Parties

3. Plaintiff: Robert Brooks Hoel, General Delivery, Minneapolis, MN 55401.
4. Defendants: City of Minneapolis; Hennepin County; Officer Adnan Didovic (#1537); Officer Stephen Sporny(#6736); Sergeant Phillip Gangnon (#2179); and John Does 1–X.

## Factual Allegations

5. On June 5, 2024, Plaintiff rode his bicycle into Uptown Minneapolis carrying water jugs. He stopped on Hennepin Avenue to examine piles of tree stumps left in the torn-up roadway.
6. At that time, Hennepin Avenue was undergoing full reconstruction. The asphalt was removed, the street was closed to cars, and the corridor reduced to dirt. Businesses remained open with signs reading: “We are open for business during construction – please come by.”
7. Plaintiff was lawfully standing on this public corridor with his bicycle and water jugs. He was not trespassing, interfering with construction, or committing any crime.
8. A surveillance contractor called 911, vaguely reporting a “theft in progress” based on remote cameras: “I think he’s putting some metal on that area.” (Exhibit A, 911 Transcript, CN 24-153307).
9. Officers Adnan Didovic (#1537) and Stephen Sporny (#6736) responded. The MPD report states they came for a “silent alarm,” saw two men, released one, and booked Plaintiff “for PC narcotics.” It confirms: “My BWC was on for the duration.” (Exhibit B, MPD Incident Report, GO# 2024-153307).
10. Officers immediately demanded identification. Plaintiff lawfully declined. Officers then handcuffed Plaintiff solely for refusing to identify himself.
11. After cuffing him, officers searched Plaintiff, seized gemstones, mocked them as “rocks,” and threw them into the dirt rather than logging them as evidence.
12. Officers placed Plaintiff in the squad car, then returned to seize his bicycle and belongings around it (laptop, digital camera, personal bags, a custom Swiss Army knife, coins, cigarettes, etc.).
13. Plaintiff was transported to Hennepin County Jail. His bicycle was delivered separately to MPD property; other items were scattered between jail and property room.
14. Jail intake included: (a) deputies keeping Plaintiff’s hands cuffed tightly behind his back and forcing his dirty hands onto a fingerprint scanner (prints failed due to dirt from tree stumps and the awkward restraint); (b) compelling him through a full-body scanner without explaining storage or access to the image; (c) stripping him to underwear, barefoot, and placing him in a cold concrete cell; (d) surrounding him with batons and forcing him to his knees with his nose to the wall by the toilet; and (e) confining him in a one-room cell with a toilet in the corner under continuous camera surveillance that covered the entire cell with no privacy.
15. The cold cell caused Plaintiff to shiver constantly. His teeth chattered uncontrollably for three days, an extreme reaction he had never experienced despite being born and raised in Minnesota. To try to keep warm, he pulled his knees to his chest and stretched his only t-shirt over them. The shirt tore, leaving him

bare-skinned and further exposed. He remained without adequate clothing, shoes, or bedding, suffering continual pain and distress.

16. Plaintiff describes the experience as humiliating, degrading, and torturous.
17. Within approximately three months of the arrest, MPD property staff told Plaintiff that most of his belongings— including his laptop, digital camera, knives, and bags — had already been destroyed, without notice or a complete inventory.
18. Plaintiff's $2,000 bicycle, however, was withheld for nearly a year. Plaintiff called Sergeant Phillip Gangnon approximately twenty-five times but never reached him leaving his phone number and email each time.
19. In 2025, nearly a year later, Plaintiff called Minneapolis 311. The operator apparently contacted Sgt. Gangnon, and Plaintiff was suddenly told his bicycle was available for pickup. Plaintiff recovered it then.
20. Shortly after Plaintiff recovered the bicycle, prosecutors filed narcotics charges allegedly based on drugs "found" near the bicycle. No such evidence was documented at the time of arrest or booking.
21. Plaintiff alleges Defendants deliberately destroyed most property within months, unlawfully withheld his bicycle for nearly a year, and retaliated by filing charges only after its release.
22. Plaintiff further alleges that all evidence purportedly obtained from the arrest is fruit of an unlawful seizure and illegal search and therefore tainted and inadmissible.

## Count I – Fourth Amendment: False Arrest / Unlawful Detention (42 U.S.C. § 1983) – Against Didovic, Sporny, and the City

23. Plaintiff realleges and incorporates by reference paragraphs 1–22 as if fully set forth herein.
24. Defendants seized and arrested Plaintiff solely because he declined to provide identification while standing in a public right-of-way.
25. Refusing to identify oneself, absent reasonable suspicion or probable cause of criminal activity, is not a crime and cannot justify arrest. See Brown v. Texas, 443 U.S. 47 (1979).
26. At no time did Defendants possess probable cause to arrest Plaintiff. See Beck v. Ohio, 379 U.S. 89 (1964).
27. The ensuing three-day detention without lawful basis violated Plaintiff's Fourth and Fourteenth Amendment rights. See Gerstein v. Pugh, 420 U.S. 103 (1975).
28. As a direct and proximate result, Plaintiff suffered loss of liberty, emotional distress, humiliation, and other damages.

## Count II – Fourth Amendment: Unlawful Search & Seizure (42 U.S.C. § 1983) – Against Didovic, Sporny, and the City

29. Plaintiff realleges and incorporates by reference paragraphs 1–28 as if fully set forth herein.
30. Defendants searched Plaintiff’s person and belongings after handcuffing him, without probable cause, warrant, or valid exception.
31. Defendants discarded Plaintiff’s gemstones and seized his bicycle and other personal items without lawful justification. See Soldal v. Cook County, 506 U.S. 56 (1992).
32. Defendants compelled Plaintiff to submit to biometric collection and body imaging without lawful basis, including forced fingerprinting while cuffed and a full-body scan. See Hayes v. Florida, 470 U.S. 811 (1985); Skinner v. Ry. Labor Executives’ Assn, 489 U.S. 602 (1989).
33. Any alleged contraband or evidence was obtained as fruit of an unlawful seizure and must be excluded under the fruit-of-the-poisonous-tree doctrine.
34. Defendants’ actions violated Plaintiff’s rights under the Fourth Amendment, causing damages.

## Count III – Fourteenth Amendment: Due Process / Property Deprivation (42 U.S.C. § 1983) – Against the City, County, Sgt. Gangnon, and John Does

35. Plaintiff realleges and incorporates by reference paragraphs 1–34 as if fully set forth herein.
36. Defendants destroyed Plaintiff’s property within three months of seizure—including his laptop computer, digital camera, knives, personal bags, and containers—without adequate notice, inventory, or opportunity to be heard.
37. Defendants withheld Plaintiff’s $2,000 bicycle for nearly a year, releasing it only after Plaintiff escalated through Minneapolis 311.
38. The City and County failed to provide a meaningful post-deprivation remedy and maintained customs or practices that foreseeably resulted in arbitrary property destruction and withholding.
39. These deprivations violated Plaintiff’s procedural due process rights under the Fourteenth Amendment and caused damages.

## Count IV – Fourteenth/Eighth Amendment: Conditions of Confinement (42 U.S.C. § 1983) – Against the County and John Does

40. Plaintiff realleges and incorporates by reference paragraphs 1–39 as if fully set forth herein.
41. As a pretrial detainee, Plaintiff was entitled to conditions not amounting to punishment. See Bell v. Wolfish,441 U.S. 520 (1979).

42. Defendants subjected Plaintiff to objectively unreasonable and punitive conditions: stripping to underwear; barefoot confinement in a freezing cell for three days; forced kneeling with nose to the wall while surrounded by armed deputies; continuous camera surveillance of a one-room cell including the exposed toilet; and forced biometric procedures. See Kingsley v. Hendrickson, 576 U.S. 389 (2015).
43. The temperature was so extreme that Plaintiff's teeth chattered uncontrollably for days; his only t-shirt tore as he tried to cover his knees; he remained bare-skinned and suffered pain and distress. See Campbell v. Cauthron, 623 F.2d 503 (8th Cir. 1980); Whitnack v. Douglas County, 16 F.3d 954 (8th Cir. 1994).
44. These practices were not rationally related to a legitimate governmental objective and were excessive in relation to any asserted need, violating the Fourteenth and Eighth Amendments.
45. As a direct and proximate result, Plaintiff suffered physical and emotional injuries and other damages.

## Count V – Municipal Liability (Monell) (42 U.S.C. § 1983) – Against the City and County

46. Plaintiff realleges and incorporates by reference paragraphs 1–45 as if fully set forth herein.
47. The City of Minneapolis maintained customs, practices, or policies—including property destruction without adequate inventory or notice, misuse of property holds to withhold valuable items, and withholding body worn camera footage—that were the moving force behind the violations of Plaintiff's rights. See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).
48. Hennepin County maintained customs, practices, or policies—including coercive intake procedures (forced fingerprinting while cuffed; compelled body scanning), punitive cold-cell confinement stripped to underwear, and total camera surveillance of open toilet areas—that were the moving force behind the violations of Plaintiff's rights.
49. The City and County failed to train and supervise their employees with deliberate indifference to constitutional rights. See City of Canton v. Harris, 489 U.S. 378 (1989); Walton v. Dawson, 752 F.3d 1109 (8th Cir. 2014).
50. These municipal policies and failures caused Plaintiff's injuries and damages.

## Count VI – Civil Conspiracy (42 U.S.C. § 1983; 42 U.S.C. §§ 1985, 1986) – Against the City, County, Officers, and John Does

51. Plaintiff realleges and incorporates by reference paragraphs 1–50 as if fully set forth herein.
52. Defendants reached an understanding and agreement to violate Plaintiff's constitutional rights by effectuating an unlawful arrest, concealing body-worn camera evidence, destroying property, withholding

Plaintiff's bicycle, imposing punitive jail conditions, and later retaliating for Plaintiff's attempts to assert his rights.

53. Overt acts in furtherance included: gemstone destruction, property destruction within three months, yearlong withholding of the bicycle, and coordination to impose punitive intake and cell conditions.
54. Defendants' conspiracy caused the deprivation of Plaintiff's rights and damages. See, e.g., Faulk v. City of St. Louis, 30 F.4th 739 (8th Cir. 2022).
55. To the extent applicable, Defendants also violated 42 U.S.C. §§ 1985 and 1986 by conspiring to deter and retaliate against Plaintiff's access to the courts and by failing to prevent such violations.

## Count VII – First Amendment Retaliation (42 U.S.C. § 1983) – Against the City and County

56. Plaintiff realleges and incorporates by reference paragraphs 1–55 as if fully set forth herein.
57. Plaintiff engaged in protected activity by petitioning the courts and repeatedly seeking the return of his property and bicycle.
58. Defendants retaliated by withholding Plaintiff's $2,000 bicycle until after Plaintiff escalated through Minneapolis 311 and then filing narcotics charges shortly after the bicycle was returned—nearly one year after the incident.
59. The timing and sequence demonstrate retaliatory motive and lack of legitimate law-enforcement purpose. See Hartman v. Moore, 547 U.S. 250 (2006).
60. Defendants' retaliation caused Plaintiff damages, including emotional distress, litigation burdens, and reputational harm.

## Count VIII – Conversion (State Law) – Against the City, County, Officers, and John Does

61. Plaintiff realleges and incorporates by reference paragraphs 1–60 as if fully set forth herein.
62. Defendants intentionally and wrongfully exercised dominion and control over Plaintiff's personal property—including his laptop, digital camera, knives, gemstones, and personal bags—by destroying or withholding them without lawful justification.
63. Defendants' conduct constitutes conversion under Minnesota law and caused Plaintiff damages, including the value of the property and consequential losses.

## Prayer for Relief

(a) A declaration that Defendants violated Plaintiff's rights under the Fourth, First, Eighth, and Fourteenth Amendments;

(b) Injunctive relief compelling production and preservation of body-worn camera footage from June 5, 2024; disclosure and copies of any body-scan images taken of Plaintiff and records of who viewed or retained them; and disclosure of the identities of all individuals who monitored or reviewed jail surveillance of Plaintiff's cell;

(c) Compensatory damages in an amount to be determined at trial;

(d) Punitive damages against the individual Defendants;

(e) Spoliation sanctions for destruction of property, including adverse inferences, evidentiary presumptions, monetary penalties, and disclosure of property logs, inventory records, and destruction protocols;

(f) Reasonable attorney's fees and costs under 42 U.S.C. § 1988;

(g) Such other and further relief as the Court deems just and proper.

## Jury Demand

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,
/s/ Robert Brooks Hoel

Robert Brooks Hoel

General Delivery

Minneapolis, MN 55401

Email: bobhoel@gmail.com